ZEHMER, Judge
(dissenting).
I respectfully dissent because the majority opinion has declined to address the critical issue presented on this appeal, i.e., whether appellant Cash was convicted of a *1357 nonexistent offense when the court adjudicated him guilty of violating the theft statute, section 812.014, Florida Statutes (1987), by not paying the alleged sales taxes when due. Conviction of a nonexistent offense is fundamental error that should be addressed by the court regardless of whether it was properly preserved for review. E.g., Achin v. State, 436 So.2d 30 (Fla.1983); Brown v. State, 550 So.2d 142 (Fla. 1st DCA 1989). Unless the state can be shown under the applicable statutes to have a possessory interest in the tax money allegedly due but not paid by Cash, there is no offense under the theft statute for failing to pay such taxes. This court ordered the parties to file supplemental briefs on this issue, which has been done, and this issue is ripe for decision.
Cash was the defendant in this prosecution under section 812.014 on one count of grand theft of $37,305.59 in United States currency that is alleged to belong to the State of Florida. The charge arose out of Cash’s failure, as a retail service station dealer, to timely pay the county local option gasoline taxes due pursuant to section 336.-025, Florida Statutes (1987). For the reasons hereafter discussed, it is my view that the state did not have a possessory interest in the alleged United States currency collected by Cash through retail sales of gasoline to constitute the criminal offense of grand theft under section 812.014. I further conclude that any criminal offense that may have been committed by Cash in failing to file the required tax returns and pay the taxes due is governed by the special criminal provisions in section 206.11 of the Florida tax statutes and is not governed by the general criminal provisions found in the grand theft statute, section 812.014. Therefore, I would reverse the theft conviction.
I.
The basic evidentiary facts are essentially undisputed. Section 336.025, Florida Statutes (1987), contains authority for county and municipal governments to levy a local option gas tax ranging from one to six cents upon each gallon of gasoline sold at retail stations within its jurisdiction. Alachua County adopted an ordinance levying this tax, and the amount of the tax due was required to be paid by a retail dealer with a monthly return filed with the state Department of Revenue. Alachua County, Fla., Ordinance 87-22 (adopted October 13, 1987); § 336.025, Fla.Stat. (1987). Cash was the sole owner of a Chevron service station that he operated from 1958 until the events giving rise to this charge. As a retail dealer (defined in section 206.01(7), Florida Statutes (1987), as “any person who is engaged in the business of selling motor fuel at retail at posted retail prices”), Cash was obligated by section 336.025 and other provisions in chapter 206, Florida Statutes (1987), to collect the local option gas tax on each gallon of gasoline sold to customers of his service station. A sign on each pump advised customers that all of the taxes were included in the price of a gallon of gas. Cash did not, nor was he required to, separately state the amount of the tax due on an invoice covering each retail sale; rather, the amount of this tax was included in the retail pump price of the gasoline sold and collected in the gross proceeds of each sale.
Although Cash had complied with state gasoline tax obligations for years, his business began to decline in 1985, and by 1987 his business had become so depressed that he became delinquent in returning and paying the local option gasoline taxes for the first eight months of 1987. For each month from January through August, he signed the gasoline tax returns prepared by his accountants and made out checks for the amounts due, but withheld submitting either to the Department of Revenue in the hope that money would become available from a business upturn to cover the checks. In October 1987, Cash filed for bankruptcy under chapter 11, but the petition was dismissed in April 1988 because his assets remaining after foreclosures on all his properties and termination of his lease by Chevron were insufficient to support reorganization under that chapter.
In June 1987, employees of the Department of Revenue noticed Cash’s failure to file the tax returns for the preceding *1358 months, so a special programs analyst in the department advised Cash by telephone of the delinquency and requested submission of the delinquent tax returns. In a written notice dated July 8, 1987, Cash was notified of the delinquent taxes, penalty, and interest due and assessed by the Department of Revenue in the total amount of $37,170.00. During August, this analyst also tried unsuccessfully to contact Cash by telephone. In October 1987, Cash filed his delinquent tax returns for the months of January through August 1987 (the August return claimed the taxes for that month had been paid to the distributor and were not included in the amount due), but sent no money with the returns.
An investigator for the Department of Revenue interviewed Cash on May 25, 1988, and obtained a recorded statement without Cash having obtained or received the advice of an attorney. In that statement, Cash admitted that he had signed the subject tax returns filed with the department and stated that he made the decision not to pay the taxes due. He further stated in response to the investigator’s questions:
“[Q]: Did you have knowledge that it was unlawful for you to convert these funds to your personal use?
[A:] Well, I never thought of it like that. I thought of it like we are going to pay this.
[Q:] Did you have knowledge that these were State and County funds at the moment they were collected?
[A:] I knew they were not mine. The State or whatever.
!jt 5jc ⅜! * S* ⅝!
[Q:] Mr. Cash, would you agree with the following statement. If the local option gas tax is included in the price of the fuel and therefore collected, when the fuel was sold and not remitted to the Department of Revenue, that these funds were converted to your business or personal use?
[A:] If I collected them in that property, I am sure they were. I mean, in the amount of profit, I am sure they were.
Cash provided the investigator with bank statements and canceled checks for his business. These statements by Cash and the business records were admitted in evidence at trial. The investigator also testified that Cash gave economic reasons, such as business reversals and low profit margins, as well as personal reasons, for his nonpayment of the taxes.
Cash moved for judgment of acquittal on grounds that the state had failed to prove that he had acted with any criminal intent and that the state of Florida, which was the alleged victim, was not the owner of money allegedly stolen. This motion and Cash’s motion for new trial were denied.
II.
Cash urges three points on appeal, the critical one being error in the trial court’s denial of his motion for judgment of acquittal. The other two points relate to eviden-tiary rulings made during trial.
After reviewing the respective briefs filed by Cash and the state, we ordered the parties to file supplemental briefs “explaining the legal basis for ruling that the local option gas tax collected by the defendant but not remitted with the return was legally U.S. currency belonging to the state of Florida within the. meaning of the provisions of the grand theft statute, section 812.014, Florida Statutes, as charged by the state.” The order also requested that the briefs “contain references to all statutes, rules, and case authority relied on” and, further, that the briefs “specifically address why any of the special criminal provisions appearing in chapter 206 are or are not applicable under the circumstances shown by [the] evidence.” In the supplemental briefs filed on these issues, neither party referred to any rule of the Department of Revenue pertinent to the issues.
Cash’s supplemental brief essentially argues that the local option gas tax funds belong to the counties for which they are collected and not to the state, because the state Department of Revenue served only as the conduit through which the taxes were to be collected by the counties. For this reason, Cash argues, the alleged tax *1359 moneys are not funds subject to theft from the state.
The state’s supplemental answer brief relies on sections 206.41, 206.56, and 336.-025, Florida Statutes (1989), as establishing that the state’s possessory interest in the tax moneys collected but not paid over by Cash was sufficient to sustain a grand theft prosecution under section 812.014. The state notes that it has cited to the 1989 statutes even though the alleged offense was committed during 1987 “because the 1987 amendments thereto do not affect the language which controls this case.” The state argues that section 336.025(2)(a) provides that the sections of chapter 206 relating to timely filing of tax returns and enforcement of the payment of taxes also apply to the county gas tax authorized in this section, and consequently sections 206.41 and 206.56 are applicable to retail dealers such as Cash who collected but failed to remit payment of such local option gas taxes. Thus, the state argues, “contrary to appellant’s argument, the legislature has made clear that the funds derived from the local option gas tax are state funds, and that a retailer such as Mr. Cash acts as an agent for the state in collecting the tax. Also contrary to appellant’s argument, section 206.56 makes clear that the Department of Revenue is not a ‘fiscal agent’ for the county in the collection and disbursement of the local option gas tax, but rather, an agent for the state authorized to collect state moneys derived from the tax for ultimate disbursement to the counties through the Local Option Gas Tax Trust Fund.”
The state’s supplemental brief further argues that the criminal provisions in chapter 206 apply under the circumstances of this case. More specifically, the state argues that section 206.56 is made applicable to retail dealers who collect the gas tax under section 336.025(2)(a), and “expressly provides that if any refiner, importer, or wholesaler fails to report and pay the funds derived from the tax to the Department of Revenue, ‘with intent to temporarily or permanently deprive the state of a right or benefit to such moneys or appropriate such moneys to his own use or that of another not entitled to such moneys,’ he shall be deemed to be guilty of embezzlement of the property of the state, and ‘shall be punished as if convicted of larceny of a like sum.’ ” The state’s brief explains that the emphasized language was added effective January 1, 1988, by chapter 87-99, section 78, Laws of Florida. The state cites to the decisions of the Fifth District in State v. H.M. Bowness Oil, Inc., 522 So.2d 73 (Fla. 5th DCA 1988), receded from on other grounds, State v. McAdams, 559 So.2d 601 (Fla.1990), and State v. Sun City Oil Co., 522 So.2d 474 (Fla. 5th DCA 1988), as authority that the state may, at its election, prosecute Cash either for embezzlement under section 206.56 or for grand theft under section 812.014.
Cash’s supplemental reply brief argues that the language of section 206.41 cited by the state relates solely to the constitutional gas tax and shows on its face that it has nothing to do with the local option gas tax involved in this case. Section 206.56, Cash argues, is operative only in an embezzlement prosecution under circumstances specifically falling within its provisions and does not authorize prosecution under the circumstances of this case for either embezzlement or grand theft under section 812.014.
III.
I find no merit in Cash’s argument that the state had no possessory or ownership interest in the moneys collected by him for taxes because the state was a mere conduit for the county, and believe it unworthy of further discussion. I conclude, however, that the statutory provisions relied on by the state do not support the state’s argument that it had a possessory interest in the alleged currency that could legally satisfy this essential element of the offense of grand theft. Close analysis of the cited sections and other relevant provisions of Florida statutes in conjunction with pertinent Department of Revenue rules in light of the evidence in this record, reveals the fallacy in the state’s argument.
*1360 A.
The charge of grand theft in this case alleged that Cash “on or between January 1, 1987 and August 31, 1987 ... did then and there knowingly obtain or use or endeavor to obtain or use certain property of the State of Florida, to wit: approximately $37,305.59 U.S. Currency ... with the intent to deprive the said State of Florida of a right to the property or a benefit therefrom, or to appropriate the property to his own use or to the use of any person not entitled thereto, contrary to Section 812.-014, Florida Statutes.” Under the charge of grand theft so alleged, an essential element of proof was that the state had the requisite possessory interest in the alleged 'currency at the time it was used by Cash for business or personal purposes, i.e., that the alleged currency used by Cash was “the property of another.”
During the relevant period in 1987, section 812.014 defined the offense of grand theft as follows:
(1) A person is guilty of theft if he knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
(a) Deprive the other person of a right to the property or a benefit therefrom.
(b) Appropriate the property to his own use or to the use of any person not entitled thereto.
[[Image here]]
(2)(b) If the property stolen is valued at $20,000 or more, but less than $100,-000, the offender is guilty of grand theft in the second degree, punishable as a felony of the second degree, as provided in ss. 775.082, 775.083, and 775.084.
(Emphasis added.) Section 812.012(4) defined “property of another” as meaning “property in which a person has an interest upon which another person is not privileged to infringe without consent, whether or not the other person also has an interest in the property.”
Accordingly, the trial court charged the jury that it must find beyond a reasonable doubt that defendant “knowingly or unlawfully obtained, used, endeavored to obtain or endeavored to use the U.S. Currency of the State of Florida” and that he did so “with the intent to either temporarily or permanently deprive the State of Florida of its right to the property or to any benefit from it or to appropriate the property of the State of Florida to his own use or to the use of any person not entitled to it.”
Clearly, the state was required to prove that it had a possessory or ownership interest in the currency referred to in the charge such that Cash could not make any use of this currency after collecting payment for the gasoline without first obtaining the state’s consent. That the state held no such ownership or possessory interest in the currency generated by Cash’s retail gasoline sales is readily demonstrated as a matter of law.
B.
Section 336.025 contains general authority for counties and municipalities to impose a local option gas tax on gasoline sold at retail service stations within their respective jurisdictions. Subsection 336.025(2)(a) provides in pertinent part:
The tax shall be collected and remitted by any person engaged in selling at retail motor fuel or using or selling at retail special fuel within a county in which the tax is authorized and shall be distributed monthly by the Department of Revenue to the county where collected. The tax remitted to the Department of Revenue pursuant to this section shall be transferred to the Local Option Gas Tax Trust Fund, which fund is created for distribution to the county and eligible municipal governments within the county in which the tax was collected and which fund is subject to the service charge imposed in chapter 215. The Department of Revenue has the authority to prescribe and publish all forms upon which reports shall be made to it and other forms and records deemed to be necessary for proper administration and collection of the tax and shall promulgate such rules as may be necessary for the enforcement of this section. The sections of chapter 206, including, *1361 but not limited, to, those sections relating to timely filing of reports and tax collected, suits for collection of unpaid taxes, department warrants for collection of unpaid taxes, penalties, interest, retention of records, inspection of records, liens on property, foreclosure, and enforcement and collection also apply to the tax authorized in this section.
(Emphasis added.)
A casual review of part I of chapter 206, referred to in the quoted section, reveals that many of its provisions are unrelated to reporting, collecting, and enforcing payment of the local option gas tax. The quoted provision incorporating sections of chapter 206 into the scheme for reporting and enforcing the local option gas tax is made ambiguous through the legislature’s unfortunate use of the overly broad and indefinite phrase, “including, but not limited to.” This ambiguity, when considered in the context of defining a criminal offense, requires a strict construction of the statute against the state and most favorably for the defendant. 14 Fla.Jur.2d, Criminal Law § 14 (1979). But as a matter of common sense, much less the application of general rules of statutory construction, section 336.025 can only be read to incorporate those sections in chapter 206 that deal with the specifically described matters and that have general application to taxes comparable in substance, effect, and procedure to the local option gas tax. In other words, only those provisions that apply to taxes that are calculated on the basis of gallons sold with the amount thereof being included in total price of the fuel sold are incorporated under this provision. It does not incorporate provisions applicable to taxes that are separately stated on a sales invoice by dollar amount and separately accounted for by the seller of gasoline, for they are not relevant to the local option gas tax. Therefore, section 336.025 does not require the local option gas tax to be collected and accounted for in the same manner as gas taxes required to be separately stated and paid pursuant to an invoice of sale, with separate accounting by the taxpayer of the specific amount of moneys so collected for the state.
Chapter 206 contains specific requirements for stating the tax due separately on invoices in respect to specified taxes that are unlike the local option gas tax. It likewise sets forth specific requirements for collecting, accounting for, and reporting by return the amounts so collected. That chapter also provides specific civil and criminal penalties for the violation of these requirements. Most significantly, however, retail sales by retail dealers are expressly exempted from these provisions. Section 206.23 states:
Any person engaged in selling motor fuel shall add the amount of the gas tax to the price of the motor fuel sold by him and shall state the tax separately from the price of the motor fuel on all invoices. However, this section shall not apply to retail sales by a retail service station.
(Emphasis added.) This provision must be read in conjunction with related provisions in sections 206.49 and 206.56. Section 206.49 provides:
(1) Each refiner or importer, when selling to any other refiner or importer any of the products taxed under this part, shall render an invoice of such sale to the purchaser, and upon such invoice the refiner or importer rendering such invoice shall plainly state thereon whether or not the tax required will be reported and paid by him, and the purchaser buying and receiving such products may fully rely upon the statement made in such invoice.
Section 206.49 thereby sets forth a specific requirement that an invoice must be used in connection with certain sales between refiners or importers, but it makes no reference to retail dealers. Neither this statute nor any other statute to my knowledge contains a requirement that sales by retail dealers to retail customers at a service station have to be made by invoice on which the amount of the tax due and collected is separately stated. And of course, such is not the practice, as we all know.
*1362 To underscore the importance of the taxpayer making an accurate accounting of the tax moneys collected pursuant to a separate statement of the tax due on invoices in the limited situations described in section 206.49, section 206.56, Florida Statutes (1985), the version in effect during 1987, provided:
If any refiner, importer, or wholesaler collects from another, upon an invoice rendered, the tax in this part contemplated, and fails to report and pay the same to the department as provided, he shall be deemed to be guilty of embezzlement of funds, the property of the state, and upon conviction shall be punished as if convicted of larceny of a like sum.
(Emphasis added.) This section, being part of the statutory authority relied on by the state to establish the theft offense of which Cash was convicted, plainly applies only to taxes collected from a refiner, importer, or wholesaler that are separately stated upon an invoice rendered; it does not apply to taxes collected as part of the gross retail sale proceeds. Most importantly, this section is one of only two sections in chapter 206 that explicitly denominate the moneys collected for taxes by a taxpayer to be “the property of the state.” The other is section 206.41.
The state’s reliance on section 206.41 for its possessory interest in the currency collected by Cash is equally inapposite and thus unavailing. That section deals exclusively with the “constitutional gas tax” levied by section 9(c), article XII of the 1968 Florida Constitution. Subsection 206.41(1), Florida Statutes (Supp.1986), defines the tax as an “excise tax of 2 cents per gallon ... imposed upon the first sale or first removal from storage, after importation into this state, of motor fuel upon which such tax has not been paid or the payment thereof has not been lawfully assumed by some person handling the same in this state.” This subsection further provides that the tax so levied “on motor fuel first imported into this state by a licensed refiner storing such fuel in a terminal facility shall be imposed when the product is first removed through the loading rack. The tax shall be remitted by the licensed refiner who owned the motor fuel immediately pri- or to removal of such fuel from storage.” Obviously, this tax must be accounted for and paid well before the fuel is sold by a retail dealer at a retail service station, and this constitutional tax falls within the category of sales wherein the tax must be separately stated on an invoice and accounted for in like fashion. Most importantly, this subsection, as does section 206.-56, explicitly provides that “revenues from this levy of tax become state funds at the time of collection by the refiner, importer, or wholesaler, who shall act as agent for the state in the collection of such tax whether he is the ultimate seller or not.” This explicit provision gives the state a clear possessory interest in the tax moneys collected under this section. But nothing in section 206.41 suggests that the constitutional gas tax is to be collected and returned by a retail dealer. Nor is the tax under section 206.41 remotely similar to the local option gas tax authorized in section 336.025. The provisions in section 206.41 simply do not relate to the collection, return, and payment of the local option gas tax. There is no explicit statutory provision making retail dealers collecting the optional gas tax “agent[s] for the state in the collection of such tax.”
That sections 206.41 and 206.56 do not apply to retail dealers charged with collecting a local option gas tax as part of the retail price of gasoline is also made clear by the Department of Revenue’s rules adopted pursuant to section 206.14. That section provides that such rules “shall have the force and effect of law.” Subsection 336.025(2)(a) authorizes the department “to prescribe and publish all forms upon which reports shall be made ... and shall promulgate such rules as may be necessary for the enforcement of this section.” Rule 12B-5.10(4) [now renumbered 12B-5.010(3)], in effect during 1987, provided:
If any person liable for the collection of taxes imposed by Chapter 206, F.S., collects from another, upon an invoice rendered, any such tax, and fails to report and pay the same to the department as provided, he shall be deemed to be *1363 guilty of embezzlement of funds, the property of the state, and upon conviction shall be punished as if convicted of larceny of a like sum.
(Emphasis added.) Rule 12B-5.07 [now 12B-5.007] required that all taxes imposed by chapter 206 be reported on forms provided by the department, and set the dates by which such reports and returns shall be filed and the tax paid. Rule 12B-5.14 [now 12B-5.403] required that the county local option gas tax be reported in the same manner as taxes imposed by chapter 206.[1] Reading chapter 206 and the implementing rules as a whole, it is apparent that sections 206.41 and 206.56, as construed by the department, apply to moneys collected for a tax separately stated on an invoice that are explicitly described as funds of the state.
In actual practice, referring to the evidence regarding the defendant in this case, the local option gas tax authorized in section 336.025 is collected by the retail dealer as an unspecified part of the total retail sale price. The currency or money collected from these retail sales for the tax is routinely deposited into the dealer’s account with all sales proceeds and thereafter used by the dealer in carrying on his business without any separate accounting for the amount of the tax collected. The retail dealer is under no obligation, statutory or otherwise, to obtain the state’s consent before it can use any part of the proceeds of such retail sales, nor does it have to account for the total specific amount of “taxes collected” as part of such retail sales. Instead, the retail dealer is required to account for the gallons of gas presumably sold to customers and to calculate the amount of the tax due solely on the basis of such gallonage. This gallonage figure, described on the Department of Revenue’s form as “Total Gallons Pumped and Subject to Tax,” is set forth on the “Retail Dealer Local Option Fuel Tax Return” prepared and filed by Cash. However, the gallons pumped are not determined by totaling the gallons sold in each retail sale; rather, the reported amount is calculated by taking the beginning inventory of gas, adding in the “Gallons Acquired or Received During Month,” and subtracting the “Actual Inventory at End of Month.” The tax due with the return is then calculated by multiplying the total gallons so determined by the local option tax rate, less a collection allowance provided by statute. There is no place on the department’s form for reporting information regarding the amount of moneys collected on account of this tax. Nothing on this form, in the statute, or in the department’s regulations places a retail dealer on notice, that the moneys or “currency” collected as part of the retail gas sale are funds of the state and must be accounted for accordingly.
*1364 The local option gas tax becomes due at the end of each monthly accounting period when the return is required to be filed. Rule 12B-5.07, Fla.Admin.Code. It becomes a debt owed by the retail dealer to the state Department of Revenue when the return is filed or an assessment is made pursuant to section 206.06 and rule 12B-5.11 [now 12B-5.011]. The state has no demonstrable possessory or ownership interest in the currency collected by the retail dealer through retail sales under any statutory provision in chapter 206 or 336. If a tax return is not timely filed or the tax due is not timely paid, section 206.06 contemplates that an assessment shall be made by the Department of Revenue to recover the tax and penalty due in accordance with the provisions in section 206.14. See also rules 12B-5.07, -5.08, -5.10, -5.11 [now rules 12B-5.007(8), -5.008(3)(b), - 5.010(4), -5.011], Fla.Admin.Code. This tax assessment fixes the amount of the debt for taxes, penalties, and interest owed to the state, and payment thereof may be enforced by the state in a number of ways, such as filing a suit for collection (§ 206.-07), issuing a warrant for collection of the tax (§ 206.075; rule 12B-5.10), or enforcing the statutory lien on the taxpayer’s property (§ 206.15; rule 12B-5.10), which is not limited to the moneys or currency collected, through a lien foreclosure action (§ 206.-175).
Based on this analysis, it is my opinion that the state could not and did not have a legally demonstrable possessory interest in the United States currency collected by Cash as part of gross retail sales that is essential to constitute the offense of grand theft under section 812.014.
C.
I would further conclude that the evidence was legally insufficient to prove that Cash had the requisite criminal intent when he failed to pay the taxes, penalties, and interest due. In view of the provisions of the rules and forms promulgated by the Department of Revenue to effect the collection of the local option gas tax, which Cash had apparently complied with for a number of years prior to 1987, it is little wonder that Cash responded as he did to the questions posed to him by the department’s investigator. His answers were ambiguous and are in accord with the procedure discussed above for handling, reporting, and paying the local option gas tax. Rather, it was the department’s investigator who apparently misunderstood the role and responsibility of retail dealers in handling the collection and payment of the local option gas tax, as certain of the leading questions put to Cash (previously quoted in this opinion) were based on an incorrect legal premise. For this reason, I would also reject the state’s argument that Cash’s conviction must be affirmed because he is bound by his admission that he knew that these funds belonged to the state. See Fiske v. State, 366 So.2d 423, 424 (Fla.1978) (Where defendant’s statement to law enforcement agents “is ambiguous and susceptible of innocent explanation as well as being indicative of criminal knowledge,” such ambiguity must be resolved in favor of the accused.).
D.
There is, however, another equally important reason why Cash’s failure to pay the taxes due under the circumstances alleged and proved by the evidence did not constitute the offense of grand theft. When a defendant’s alleged acts of misconduct are covered by a specific statute, the specific statute will control over a more general statute covering those acts, and this is particularly true in criminal cases when the specific statute provides for lesser penalties than the general statute. This rule was described by the supreme court in Adams v. Culver, 111 So.2d 665 (Fla.1959):
There are, of course, many cases in which, in committing one crime, an accused necessarily commits another. For example, rape involves fornication, and robbery involves both assault and larceny. Or two criminal statutes may each proscribe some conduct not covered by the other but may overlap in a narrow area; and it has been held that, at least where different proof is required for each offense, a single act or transaction *1365 may violate both statutes and the violator may be prosecuted under either. [Citations omitted.] It is a well settled rule of statutory construction, however, that a special statute covering a particular subject matter is controlling over a general statutory provision covering the same and other subjects in general terms. In this situation, “ ‘the statute relating to the particular part of the general subject will operate as an exception to or qualification of the more general terms of the more comprehensive statute to the extent only of the repugnancy, if any.’ ” [Citations omitted.] It has been said that this rule “is particularly applicable to criminal statutes in which the specific provisions relating to particular subjects carry smaller penalties than the general provision.” [Citations omitted.]
Ill So.2d at 667. In Adams, the defendant was prosecuted for having exhibited lewd and pornographic pictures to an eleven-year-old female child. Applying the quoted rule, the supreme court held that based on these facts the defendant could not be prosecuted for lewd and lascivious conduct under section 800.04, Florida Statutes, a felony then punishable by not more than ten years in prison, because such conduct was specifically proscribed either by section 847.01(1), Florida Statutes, a felony carrying a penalty of up to three years’ imprisonment, or section 847.01(2), a felony punishable by imprisonment up to five years. The supreme court reasoned that because the specific conduct forming the basis of the criminal charge was covered by a specific statute providing a lesser penalty, that specific statute and not the general statute on lewd conduct was applicable. Id. at 666-67.
As previously discussed, chapter 206 contains specific provisions for the imposition of criminal penalties for violations of that chapter. Section 206.56 subjects a taxpayer to prosecution for embezzlement for failure to account for tax moneys collected pursuant to invoices separately stating the amount of the tax on the theory that such separately described funds are deemed to be the property of the state when collected. Other offenses for violations of chapter 206 are provided in section 206.11.[2] The criminal provisions in this section deal specifically and directly with the filing of false or fraudulent returns as well as the failure to timely make a return of taxes due, and specify criminal penalties for such violations, including the requirement to pay additional monetary penalties for failing to pay the taxes due with the return. Under the rule stated in Adams v. Culver, the specific provisions of these statutes take precedence over the more general provisions of the grand theft statute when, as in the case now before us, the acts charged are covered by these statutes. Thus, prosecution of Cash under section 812.014, the general grand theft statute, for failing to *1366 file his returns and pay the taxes when due is impermissible.
E.
I now turn to the two cases from the Fifth District relied on by the state. In State v. H.M. Bowness Oil, Inc., 522 So.2d 73 (Fla. 5th DCA 1988), the state filed an information containing twenty counts of charges for embezzlement under section 206.56 and twenty counts for grand theft of the same sums under section 812.014(2). Obviously, the charges in that case arose out of the defendant’s failure to pay over to the state taxes collected pursuant to invoices that separately stated the amount of tax collected. The offense of embezzlement described in section 206.56, though specified to be punished as if convicted of larceny, must now be punished as if convicted of grand theft under section 812.014 anyway, because the provisions of section 812.014 have now superseded the previous statutory provisions governing larceny and embezzlement. See Thomas v. State, 584 So.2d 1022 (Fla. 1st DCA), dismissed, 587 So.2d 1831 (Fla.1991). Section 812.012(2)(d) defines “obtains or uses” to mean “[c]on-duct previously known as ... larceny [and] embezzlement.” Thus, the Fifth District’s approval of the prosecution’s having filed alternative charges for both embezzlement under section 206.56 and grand theft under section 812.014 when charges under both statutes arose out of the same transaction is irrelevant to the decision in the instant case. It is clear that Bowness Oil involved tax transactions involving a separate statement of the tax collected to be covered by section 206.56. Unlike the situation in Bowness Oil, the single charge brought against Cash in this case did not involve taxes collected upon invoices rendered and thus were not moneys statutorily denominated to be funds of the state when collected.
The circumstances giving rise to the prosecution for embezzlement and grand theft in State v. Sun City Oil Co., 522 So.2d 474 (Fla. 5th DCA 1988), with the exception of an additional RICO charge, were said by the court to be identical to the issues in Bowness Oil; thus, Sun City is also materially distinguishable for the same reasons.
IV.
For the reasons set forth above, I would reverse Defendant’s conviction of grand theft under section 812.014. The factual premise alleged in the information filed against Defendant — that he unlawfully appropriated to his own use United States currency belonging to the state — is not supported by the applicable statutes and rules relied on by the state to establish that such currency belonged to the state rather than Defendant. Concisely stated, sales taxes collected as part of the total retail price of gasoline are not funds belonging to the state, and a taxpayer’s failure to remit the taxes due on such sales does not and cannot under the law amount to an interference with the state’s possessory interest in such taxes or currency. Such currency belongs to the taxpayer. Only when there is a specific statutory provision identifying the money or currency collected for taxes as funds belonging to the state does the failure to remit such taxes constitute the criminal offense of grand theft. On the allegations and proof in this case, Defendant Cash has been convicted of a nonexistent criminal offense.
One may question why I felt compelled to expend the time and effort in dealing with this issue in this case. I view the notion that a taxpayer commits the offense of grand theft for not timely paying taxes, absent a specific statutory provision that the moneys collected by the taxpayer are to be treated as funds belonging to the state, as presenting a serious question of great public importance. Without such statutory provision, the taxpayer is not informed that the money or currency so collected is not available for use by the taxpayer and must be accounted for separately. The princb pies applied by the state in this case are not limited to nonpayment of the local option gasoline sales tax here involved, but are applicable to a taxpayer’s failure to pay other kinds of taxes as well. Thus, I consider the question presented to be one of great public importance and join in the *1367 certification of the question to the supreme court.

. The provisions in these rules were incorporated in rule amendments adopted by the Department of Revenue in 1988. The 1988 amendments renumbered the rules and gave more definitive constructions to the various sections in chapter 206. Since no significant amendments were made in 1988 to the sections of chapter 206 relevant to the discussion in this case, these amendments are instructive on the Department of Revenue’s view of legislative intent with respect to these sections.
For example, rule 12B-5.007, which replaced 12B-5.07, requires refiners, importers, wholesalers, jobbers, retail dealers and carriers of motor fuel to report and remit all taxes as specified therein. Subsection (2)(a) requires refiners, importers, and jobbers to "report all taxes imposed" on Form DR-119, and this form has various approved schedules for reporting “Tax Collected Fuel Sold.” See rule 12B-5.012 and forms numbered DR-119, sched. 5A; DR-119A, sched. 5B. Similarly, wholesalers are required by subsection (4)(a) of this rule to report the taxes imposed on Form DR-119W or WA, which also has special schedules for reporting "Tax Collected Fuel Sold." See rule 12B-5.012 and forms numbered DR-119W, sched. 5A; DR-119WA, sched. 5B. The entities described above are required by subsections (2)(b) and (4)(b) of this rule to report the local option gasoline tax imposed by section 336.025 on Form DR-120. That form has no separate schedule to be attached for reporting "taxes collected,” only a schedule for reporting "Gallons For Which Voted and Optional Gas Tax is Collected.” Retail dealers, such as the defendant in this case, are required to report "all voted and local option taxes" due under sections 336.021 and 336.025 on Form DR-121, which also does not have a separate schedule to be attached for reporting "taxes collected.” Related but similar provisions dealing exclusively with the local county gas taxes authorized in sections 336.021 and 336.025 are found in rules 12B-5.401 and 12B-5.403, Florida Administrative Code.

. That section read in 1987:
(1) Any false or fraudulent statement or report submitted under the gas tax laws of this state and sworn to by a person knowing same to be false or fraudulent shall constitute perjury, and, upon conviction thereof, the person so convicted shall be punished as provided by law for conviction of perjury under s. 837.01.
(2) Any person:
(a) Who willfully refuses or neglects to make any statement, report, or return required by the provisions of this law;
(b) Who knowingly makes, or assists any other person in making, a false statement in a return or report or in connection with an application for refund of any tax;
(c) Who knowing collects, or attempts to collect or causes to be paid to him or to any other person, either directly or indirectly, any refund of such tax without being entitled to the same; or
(d)Who violates any of the provisions of part I or part II of this chapter, a penalty for which is not otherwise provided, is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.-083. For a second or further offense, such person is guilty of a felony of the third degree, punishable as provided in s. 775.082 or s. 775.-083; and, in addition thereto, the department may revoke or suspend the license of any violator. Each day or part thereof during which any person engages in business without being the holder of an uncanceled license as provided in part I or part II of this chapter shall constitute a separate offense within the meaning of this section. In addition to the penalty imposed by part I or part II of this chapter, the defendant shall be required to pay all gas taxes, interest, and penalties due to the state. The penalties provided in this section shall be in addition to those provided for in s. 206.44.